**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

| | |
|---|---|
| **CHRISTINE THOMAS,** on behalf of herself and all others similarly situated,<br>　　　　　　**Plaintiff,**<br>**v.**<br><br>**FAIR HARBOR CLOTHING PBC,**<br>　　　　　　**Defendant.** | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br>**& DEMAND FOR JURY TRIAL** |

-----------------------------------------------------------

　　　　Plaintiff, Christine Thomas ("Plaintiff" or "Ms. Thomas"), individually and on behalf of all others similarly situated, by and through undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against **FAIR HARBOR CLOTHING PBC** ("Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, the New York Civil Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

### INTRODUCTION

1. On September 25, 2018, the U.S. Department of Justice reaffirmed its longstanding position that websites operated by places of public accommodation must be accessible to individuals with disabilities. In a letter to Representative Ted Budd, Assistant Attorney General Stephen E. Boyd stated: "The Department first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago." This interpretation aligns with Title III's mandate that the goods, services, and privileges offered by such entities are equally accessible to all, including those with disabilities.

2. Plaintiff, CHRISTINE THOMAS, is a legally blind resident of Bronx County, New York. As documented by Christopher R. Scheno, O.D., of Optix Now, 2848 Bellmore Avenue,

Suite 001, Bellmore, New York 11710, Ms. Thomas is legally blind as a result of severe bilateral ocular trauma sustained at approximately age 12 as a direct result of a vehicular accident. Her right eye suffered complete and permanent loss of vision with an absence of light perception; her left eye sustained severely compromised and significantly impaired visual function. The combined bilateral visual impairment constitutes legal blindness under applicable federal and New York State standards, and there are no treatments or interventions expected to restore any degree of visual function. (See Exhibit A.)

3. Ms. Thomas is a proficient user of screen-reading software, including Job Access With Speech ("JAWS") and/or NonVisual Desktop Access ("NVDA"), which she relies on daily to navigate digital environments independently. Her reliance on keyboard-based navigation and screen-reading protocols enables her to engage with online retail platforms, product pages, shopping carts, and checkout portals without sighted assistance. Screen-reading software is indispensable to her autonomy and digital access. Due to the permanent nature of her condition, Ms. Thomas will require assistive technology and digital accessibility accommodations for the remainder of her life.

4. This action arises from Defendant FAIR HARBOR CLOTHING PBC's failure to design, maintain, and operate its website, www.fairharborclothing.com (the "Website"), in a manner accessible to blind and visually impaired individuals. The Website functions as an interactive retail platform and digital gateway for Defendant's sustainable apparel and swimwear business, through which Defendant markets and sells clothing products to consumers throughout the United States, including New York. Defendant's failure to ensure equal access to these services violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5. On multiple occasions in April, May, and June 2026, Ms. Thomas visited

www.fairharborclothing.com using screen-reading software with the genuine intent to shop for apparel products for her own use. Specifically, Ms. Thomas sought to purchase Defendant's "The Anchor Trunk – Swim Suit With Liners" (hereinafter "The Anchor Trunk") and to browse and evaluate related swimwear offerings on Defendant's Homepage. Ms. Thomas was drawn to Defendant's Website because Defendant prominently markets sustainable, beach-lifestyle apparel products — including swim trunks and related apparel — directly through its Website, and because Defendant's Website represents The Anchor Trunk as a versatile, comfortable swimsuit built from recycled materials designed for the beach and beyond.

6. As a legally blind consumer, Ms. Thomas depends on accessible online shopping to avoid the logistical and emotional burdens of in-person retail environments, which often require her to seek assistance from others in order to identify products, compare styles, evaluate sizing, and complete purchases. During her visits to the Website, on April 14, 2026, May 7, 2026, and June 2, 2026, respectively, Ms. Thomas attempted to browse product offerings on Defendant's Homepage, review product descriptions and benefits for The Anchor Trunk, identify pricing and size options, evaluate the available product images, add items to her shopping cart, and proceed through the purchase flow. Because the Website lacked proper alternative text for images, contained empty and unlabeled interactive buttons and links, featured missing and improperly implemented form labels, included inaccessible navigation menus and select controls, and failed to provide screen-reader-compatible markup throughout key portions of its pages, Ms. Thomas was unable to meaningfully access the product information, compare available items, or independently complete the intended purchases.

7. These barriers are not isolated defects. The WAVE accessibility scan of Defendant's The Anchor Trunk product page (www.fairharborclothing.com) reveals 9 accessibility errors,

together with contrast errors, alerts, and structural issues. Among the identified errors are missing alternative text errors for product images, empty button errors, empty link errors, and missing or improperly labeled form controls. The WAVE scan of Defendant's Homepage (www.fairharborclothing.com) reveals 12 accessibility errors, including additional missing alternative text errors, empty buttons, empty links, contrast failures, and structural markup deficiencies. The independent SortSite accessibility audit of Defendant's Website — which was stopped after scanning only 34 pages — identified hundreds of WCAG 2.1 violations across multiple categories, including images without alternative text, form controls without accessible names, buttons without discernible text, links with non-descriptive text, insufficient color contrast, inaccessible hidden elements, and pervasive ARIA implementation defects spanning the entire Website. Exhibit B

8. These barriers directly interfered with Plaintiff's ability to access the specific products she sought to review and purchase. Because The Anchor Trunk product page included product images without meaningful text alternatives, Ms. Thomas could not independently understand the product's appearance, colorways, or visually presented features. Because the page and Homepage contained empty buttons and empty links, she could not reliably determine the purpose of actionable controls needed to add the item to her shopping cart, navigate promotional areas, access size guides, dismiss overlays, or proceed toward purchase. Because the pages contained missing or improperly labeled form controls, Ms. Thomas could not independently operate size selectors, color pickers, or other interactive shopping elements. Because the Homepage contained unlabeled navigational and structural elements, Ms. Thomas could not efficiently identify and navigate between Defendant's product categories or access the specific product offerings and promotional content that sighted users could easily browse.

9. Defendant FAIR HARBOR CLOTHING PBC, upon information and belief, owns and operates www.fairharborclothing.com, a nationwide e-commerce platform offering sustainable swimwear, apparel, and related products to consumers across the United States, including New York. The Website is Defendant's principal and, upon information and belief, primary direct-to-consumer sales channel. Defendant markets its products and directs its sales activities to New York consumers through the Website, and the discriminatory conduct giving rise to this action occurred, in material part, within this District.

10. Ms. Thomas specifically sought out Defendant's Website because Defendant promotes branded sustainable apparel products with detailed product descriptions, sizing guides, pricing, promotional content, and direct-to-consumer purchasing features that she wished to access independently. As a blind consumer, she depends on accessible digital interfaces to make informed purchasing decisions, review product details, compare style options, evaluate promotional offerings, and complete transactions privately and independently. Defendant's failure to provide a WCAG-compliant Website denied her equal access to the same services offered to sighted users.

11. Ms. Thomas remains highly motivated to return to www.fairharborclothing.com and complete her intended purchases once the Website is made accessible. Her intent to return is concrete, particularized, and ongoing: she still intends to purchase The Anchor Trunk and to further browse and evaluate additional swimwear and apparel offerings on Defendant's Website. These products, together with Defendant's product descriptions, sizing tools, promotional content, and direct purchasing features, are not equally available to her through an accessible alternative channel that offers the same shopping experience. Without remediation of the barriers described herein, Ms. Thomas will continue to be excluded from accessing Defendant's goods and services on equal terms with sighted consumers.

12. Defendant's ongoing failure to provide accessible digital services constitutes a denial of full and equal access under Title III of the ADA and under New York State and City law. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendant to bring its Website into compliance with federal accessibility standards, together with damages, statutory relief, attorneys' fees, costs, and such other relief as set forth below.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

14. Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

15. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant FAIR HARBOR CLOTHING PBC conducts substantial and continuous business in this District through its interactive Website, www.fairharborclothing.com. Plaintiff accessed and attempted to use this Website from her residence in Bronx County, New York, and the discriminatory conduct giving rise to this action occurred within the jurisdiction of this Court.

16. Upon information and belief, Defendant is organized outside New York but actively engages in commercial transactions with New York residents through its Website. These transactions include product selection, review of product details, account interaction, checkout, payment processing, and customer support. Defendant's digital infrastructure knowingly transmits

data and files into New York, establishing purposeful availment under federal precedent. See Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018); Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 592 U.S. ___ (2021); South Dakota v. Wayfair, Inc., 585 U.S. ___ (2018); Romero v. 88 Acres Foods, Inc., 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); Sanchez v. NutCo, Inc., 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

17.  Accordingly, jurisdiction and venue are properly established in this District. Courts have consistently held that accessibility barriers encountered by users within the forum state provide a sufficient basis for asserting personal jurisdiction over out-of-state website operators.

## NATURE OF ACTION

18.  This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

19.  The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating — for sighted, blind, and visually impaired individuals alike.

20.  In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or

displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

21. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

22. Plaintiff, CHRISTINE THOMAS, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYSHRL, NYCHRL, and NYCRL. To access the Internet, Plaintiff re23. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software translates the visual internet into an auditory equivalent, reading page content, announcing links, buttons, headings, labels, and other interface elements so the user can navigate through keyboard commands.

24. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

25.  Non-compliant websites pose recurring barriers to blind and visually impaired users. Common violations include, but are not limited to:

a.  Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

-Scripts without accessible alternatives;

d.  Inaccessible forms and input fields;

e.  Content conveyed solely through visual presentation;

f.  Inability to resize text without loss of functionality;

g.  Time limits that cannot be adjusted or disabled;

h.  Missing or ambiguous page titles and headings;

i.  Links lacking descriptive context;

j.  Keyboard focus indicators that are not discernible;

k.  Undetectable default language settings;

l.  Components that trigger unexpected context changes;

m.  Settings that alter context without user notice;

n.  Input fields lacking labels or instructions;

o.  Improperly nested markup, duplicate attributes, and non-unique IDs;

p.  Inaccessible PDF files;

q.  User interface elements whose roles and states cannot be programmatically determined; and/or

r.  Empty buttons, empty links, and unlabeled interactive controls that prevent a screen reader user from independently navigating and completing a transaction.

## **STATEMENT OF FACTS**

26.    Plaintiff CHRISTINE THOMAS is a legally blind consumer residing in Bronx County, New York, at 210 East 203rd Street, Bronx, New York 10458. She has been clinically evaluated and found to have sustained severe bilateral ocular trauma at approximately age 12 as a direct result of a vehicular accident, resulting in complete and permanent loss of vision in the right eye and severely compromised visual function in the left eye. Ms. Thomas's diagnosis and legal blindness status are documented by Christopher R. Scheno, O.D., of Optix Now, 2848 Bellmore Avenue, Suite 001, Bellmore, New York 11710. (See Exhibit A.)

27.    As confirmed in the July 15, 2026 medical letter, Ms. Thomas's right eye is clinically non-functional with an absence of light perception, and no treatment or intervention is expected to restore any degree of visual function. Her left eye's residual vision is severely limited and does not meet the threshold required for normal functional vision. The combined bilateral visual impairment constitutes legal blindness as defined under applicable federal standards (as set forth by the Social Security Administration and the American Foundation for the Blind) and applicable New York State standards. Ms. Thomas accordingly requires accommodations afforded to legally blind persons under state and federal law. Her impairment is not episodic or situational — it is a permanent, lifelong condition arising from physical trauma sustained during childhood.

28.    Ms. Thomas relies on screen-reading software — including JAWS and/or NVDA — to navigate the Internet and complete online transactions independently. She uses keyboard-based navigation to browse, select items, and attempt purchases on retail websites. Without a properly coded, screen-reader-compatible website, Ms. Thomas cannot independently access online shopping services on the same terms as sighted consumers.

29.    On April 14, 2026, Ms. Thomas visited www.fairharborclothing.com using screen-

reading software with the genuine intent to purchase Defendant's The Anchor Trunk – Swim Suit With Liners for her own use. Ms. Thomas was drawn to The Anchor Trunk because the product page represented that it was a versatile, ultra-comfortable swim trunk built from recycled plastic bottles, designed for coastal living, available in multiple colors and sizes, and featured a liner suited for swimming and beach activities. As someone interested in sustainable beachwear and swimwear products, Plaintiff sought to review the product details, sizing information, available colors, pricing, and ordering functions so that she could independently decide whether to purchase the product.

30.  While navigating the Website on April 14, 2026, Ms. Thomas attempted to access The Anchor Trunk product page, review the product descriptions and features, identify the available sizes and colors through the selection controls, understand the product's visual presentation, and activate the controls needed to add the item to her cart. At each step, she encountered disabling access barriers that prevented her from completing these tasks independently.

31.  Specifically, when Ms. Thomas's screen-reading software attempted to read The Anchor Trunk product page, it encountered product images and graphical content lacking meaningful alternative text. The WAVE scan of The Anchor Trunk product page documents missing alternative text errors. As a result, Ms. Thomas could not understand the visual product depictions, colorway photography, size or lifestyle imagery, or other visually presented information describing the appearance, color, and features of The Anchor Trunk. Because a screen reader user's ability to evaluate apparel products depends critically on descriptive image alternatives — particularly for swimwear where visual appearance and style are key purchasing factors — these errors directly foreclosed Plaintiff's ability to make an informed purchasing decision.

32.  The WAVE scan and the SortSite audit further reveal visually presented promotional content and product information on The Anchor Trunk page that was not presented in a reliably accessible format for screen-reader users. Because these materials were not properly coded, Ms. Thomas could not independently determine the full substance of Defendant's product claims, promotional descriptions, or styling information from the product page.

33.  During the same visit, Ms. Thomas encountered empty buttons and empty links while tabbing through The Anchor Trunk product page. The WAVE scan of this page identifies empty button errors and empty link errors. Her screen reader either announced nothing meaningful for numerous controls or announced insufficient information to identify the control's purpose. This prevented her from efficiently navigating the page, dismissing overlays, understanding actionable elements, activating size or color selection functions, and adding the product to her cart with confidence.

34.  Ms. Thomas also encountered missing labels on interactive controls and select elements on The Anchor Trunk product page. Because of these missing labels, Plaintiff could not independently determine the purpose of certain fields and controls, and could not confidently interact with size selection, color selection, or purchase-related interface elements. This directly precluded her from choosing a size and color for The Anchor Trunk and advancing toward checkout.

35.  The SortSite audit of Defendant's Website — which was halted after scanning only 34 of the Website's many pages — identified pervasive accessibility violations across multiple WCAG 2.1 checkpoints sitewide. These include, but are not limited to: images without text alternatives (WCAG 1.1.1); form controls without accessible names (WCAG 1.3.1 and 4.1.2); buttons without discernible text (WCAG 4.1.2); links with non-descriptive text such as "Learn More" or "Click Here" with no surrounding explanatory context (WCAG 2.4.4 and 2.4.6); insufficient color contrast throughout the Website (WCAG 1.4.3); hidden elements and their contents not voiced by

screen readers, but containing focusable active elements such as buttons, inputs, and select and textarea controls (WCAG 4.1.2); duplicate aria-labelledby attributes pointing to elements in the same document (WCAG 4.1.3); aria-labelledby attributes referencing elements that do not exist (WCAG 4.1.3); missing page language declarations (WCAG 3.1.1); use of positive tabindex values that override natural document reading order (WCAG 1.3.2); and improperly implemented ARIA attributes and structural markup defects throughout the sitewide codebase. These errors were found across the Homepage, product collection pages, individual product pages including The Anchor Trunk page, and checkout-related pages. Exhibit C

36.  On May 7, 2026, Ms. Thomas returned to Defendant's Website to reattempt the purchase of The Anchor Trunk and to see whether the barriers she previously encountered had been corrected. During this second visit, she again attempted to review the product page, understand the product's features and styling, identify the relevant size and color selection controls, and move toward adding the product to the cart. She encountered the same and similar barriers, including inaccessible product images, empty or unlabeled controls, and inaccessible form elements, and again could not independently complete the transaction.

37.  On June 2, 2026, Ms. Thomas returned to the Website for a third time, intending not only to reattempt access to The Anchor Trunk product page but also to browse Defendant's Homepage and evaluate additional sustainable apparel and swimwear offerings. In particular, Ms. Thomas attempted to use Defendant's Homepage — which the WAVE scan reveals has 12 accessibility errors including missing alternative text errors, empty buttons, empty links, contrast failures, and structural issues — to identify and navigate to additional product categories of interest and to understand Defendant's full range of swimwear and apparel offerings.

38.  However, when Ms. Thomas attempted to navigate Defendant's Homepage on June 2, 2026, she encountered the Homepage-specific accessibility barriers documented in the WAVE scan of the Homepage. Because Homepage images, buttons, links, and navigation elements lacked proper accessible labels, alternative text, and structural coding, Ms. Thomas could not efficiently determine which product categories were available, navigate to relevant collections, understand the Homepage's promotional and featured-product content, or independently explore the full range of Defendant's offerings as a sighted user could.

39.  The WAVE scan of Defendant's Homepage identifies 12 accessibility errors encompassing missing alternative text for images and linked images, empty buttons that provide no meaningful announcement to her screen reader, empty links that cannot be identified by purpose, and contrast failures. Because the Homepage serves as the primary gateway through which consumers discover and navigate Defendant's product catalog — and because Defendant actively uses the Homepage to feature promotional items, new arrivals, bestsellers, and seasonal collections — these barriers denied Ms. Thomas the same product discovery and navigation experience available to sighted shoppers.

40.  Together, the WAVE scans and the SortSite audit, and Plaintiff's repeated experiences, confirm that the barriers she encountered were not temporary, isolated glitches, but part of a page-wide and site-wide pattern of non-compliance with generally accepted accessibility standards, including WCAG 2.1 Level A and AA principles.

41.  As a result of the foregoing accessibility barriers, Ms. Thomas was denied full and equal access to Defendant's Website and was unable to independently complete the purchases she had specifically intended to make. She left the Website without completing her transactions and without any accessible means of obtaining an equivalent shopping experience.

42. Ms. Thomas is highly motivated to return to www.fairharborclothing.com and complete her intended purchases once the Website is made accessible. Her intent to return is concrete, ongoing, and not speculative. She still intends to purchase The Anchor Trunk and to further browse and evaluate additional swimwear and apparel offerings through Defendant's Website. As a legally blind consumer who relies on screen-reading software to navigate online retail platforms, Ms. Thomas cannot complete these tasks on terms equal to those available to sighted consumers unless and until Defendant remediates the barriers identified herein.

43. Ms. Thomas has a genuine, ongoing desire to shop on www.fairharborclothing.com. Defendant's Website is the direct source of Defendant's branded sustainable apparel products, associated product descriptions, sizing and color selection tools, pricing, promotions, and account-based retail features. The specific products Ms. Thomas intends to purchase and evaluate — The Anchor Trunk and additional swimwear and apparel from Defendant's Homepage collections — are of concrete interest to her, and she seeks access to the same product information and purchasing tools made available to sighted consumers.

44. Ms. Thomas's intent to return to Defendant's Website specifically — rather than merely to browse the Internet generally — is grounded in concrete facts: she previously visited the Website on three separate dates; she sought to purchase a specific identified product, The Anchor Trunk; she also sought to browse and evaluate additional swimwear and apparel through Defendant's Homepage; she attempted to engage with specific commercial tasks including reviewing product benefits, evaluating color and size selections, using product controls, and proceeding toward checkout; and she remains interested in completing those transactions once the Website is accessible. This is not a vague desire to revisit an unidentified website someday, but a present and continuing plan to return to Defendant's Website for specific commercial purposes.

45.  Ms. Thomas has suffered a past injury — her inability to independently complete intended transactions and access specific, identified products due to documented accessibility barriers on www.fairharborclothing.com — and faces a real and immediate threat of future harm given her specifically articulated intent to return to the Website once it is made accessible and the ongoing nature of the accessibility deficiencies documented in the WAVE scans and SortSite audit. Her injuries are directly traceable to Defendant's failure to maintain an accessible website, and they are fully redressable through the injunctive and other relief requested herein. Accordingly, Ms. Thomas has standing to bring this action under Title III of the ADA and the Second Circuit's controlling standing authority, including Calcano.

## CLASS ACTION ALLEGATIONS

46.  Plaintiff CHRISTINE THOMAS brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals. The proposed Class is defined as follows:

All legally blind individuals in the United States who have attempted to access www.fairharborclothing.com and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "Class").

47.  The proposed New York Subclass is defined as follows:

All legally blind individuals domiciled in the State of New York who have attempted to access www.fairharborclothing.com and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "New York Subclass").

48.  The proposed New York City Subclass is defined as follows:

All legally blind individuals domiciled in New York City who have attempted to access www.fairharborclothing.com and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "New York City Subclass").

49. Numerosity is satisfied because the Class and Subclasses are so numerous that joinder of all members is impracticable. There are numerous blind and visually impaired individuals in the United States, New York State, and New York City who use screen-reading software to access online commerce.

50. Commonality is satisfied because common questions of law and fact apply to all members of the Class and Subclasses, including whether Defendant's Website contains access barriers, whether Defendant failed to implement reasonable accessibility measures, whether those barriers deny blind users full and equal access, and whether injunctive and other relief should issue.

51. Typicality is satisfied because Plaintiff's claims are typical of the claims of the Class and Subclasses. Plaintiff, like the other members, is legally blind, relies on screen-reading software, attempted to access Defendant's Website, and encountered access barriers that denied her full and equal enjoyment of Defendant's goods and services.

52. Adequacy is satisfied because Plaintiff will fairly and adequately protect the interests of the Class and Subclasses and has retained counsel competent and experienced in disability rights and complex litigation.

53. Class certification is appropriate under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, making final injunctive and corresponding declaratory relief appropriate respecting the Class and Subclasses as a whole.

**FIRST CAUSE OF ACTION**
*(Violations of the ADA, 42 U.S.C. § 12182 et seq.)*

54.  Plaintiff, CHRISTINE THOMAS, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55.  Section 302(a) of Title III of the ADA, 42 U.S.C. § 12182(a), provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.

56.  Defendant's Website, www.fairharborclothing.com, is offered to the general public as Defendant's principal direct-to-consumer retail channel. As such, it must be equally accessible to all potential consumers, including those who are blind or visually impaired.

57.  Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

58.  Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination includes, inter alia, a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

59.  Defendant has discriminated against Plaintiff and the Class by maintaining a Website that is inaccessible to blind and visually impaired individuals, by failing to remove access barriers, and

by failing to make the accessibility features of the Website available to individuals who are sight-impaired and rely on screen-reading software.

60.  Plaintiff and the Class have been denied full and equal access to Defendant's Website and to the goods, services, privileges, and advantages offered thereon.

61.  Defendant's acts and omissions violate Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services inferior to those provided to non-disabled persons. Defendant has failed to take prompt and equitable steps to remedy the discriminatory conduct, and the violations are ongoing.

62.  Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests the relief set forth below.

## <u>SECOND CAUSE OF ACTION</u>
*(Violation of the New York State Human Rights Law)*

63.  Plaintiff CHRISTINE THOMAS, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

64.  At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covered the actions of Defendant. Plaintiff, at all relevant times, as a result of her severe bilateral visual impairment and legal blindness, has a disability within the meaning of the NYSHRL.

65.  Defendant, at all relevant times, owns and operates a place of public accommodation — the Website, www.fairharborclothing.com — within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of N.Y. Executive Law § 292(1).

66.  Plaintiff has visited the Website on multiple occasions and has encountered barriers to access on each occasion.

67.  Under N.Y. Executive Law § 296(2)(a), it is an unlawful discriminatory practice for the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, because of the disability of any person, directly or indirectly, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities, or privileges thereof.

68.  Discrimination under the NYSHRL includes the refusal to make reasonable modifications in policies, practices, or procedures, and the refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services.

69.  Defendant's actions violate the NYSHRL by owning and operating a Website that is inaccessible to blind and visually impaired individuals, by not removing access barriers to its Website, and by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities.

70.  Defendant has intentionally and/or willfully discriminated against Plaintiff and the New York Subclass in violation of the NYSHRL.

## THIRD CAUSE OF ACTION
*(Violation of the New York City Human Rights Law)*

71.  Plaintiff CHRISTINE THOMAS, on behalf of herself and the Class and New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72.  At all times relevant herein, Defendant was subject to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. Plaintiff is a person with a disability within the meaning of N.Y.C. Admin. Code § 8-102.

73.  Defendant's Website constitutes a place or provider of public accommodation within the meaning of N.Y.C. Admin. Code § 8-102 and § 8-107.

74.  The NYCHRL requires places of public accommodation to provide full and equal enjoyment to persons with disabilities and to make reasonable accommodations so that persons with disabilities may have access to goods and services on equal terms.

75.  Defendant discriminated against Plaintiff and the New York City Subclass by maintaining a Website that denies blind and visually impaired individuals equal access to Defendant's goods and services, and by failing to make reasonable accommodations and modifications necessary to render the Website accessible.

76.  Defendant's conduct constitutes an unlawful discriminatory practice in violation of the NYCHRL, entitling Plaintiff and the New York City Subclass to damages, injunctive relief, attorneys' fees, costs, and all other available relief.

## FOURTH CAUSE OF ACTION
*(Violation of New York Civil Rights Law § 40-c)*

77.  Plaintiff CHRISTINE THOMAS, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

78. New York Civil Rights Law § 40-c guarantees that no person shall, because of disability, be subjected to any discrimination in civil rights by any other person or by any firm, corporation, or institution.

79. By maintaining a Website that is inaccessible to Plaintiff and other legally blind consumers and by denying them equal access to Defendant's goods and services, Defendant has discriminated against Plaintiff and the New York Subclass because of disability in violation of New York Civil Rights Law § 40-c.

80. As a direct and proximate result of Defendant's conduct, Plaintiff and the New York Subclass have suffered injury and are entitled to all available relief.

**FIFTH CAUSE OF ACTION**
*(Violation of New York Civil Rights Law § 40-d)*

81. Plaintiff CHRISTINE THOMAS, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

82. New York Civil Rights Law § 40-d provides for penalties and remedies arising from violations of § 40-c.

83. Defendant's discriminatory conduct, as described herein, violated New York Civil Rights Law § 40-c and thereby entitles Plaintiff and the New York Subclass to recover the statutory damages and penalties authorized by § 40-d, in addition to other appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant the following relief:

A.  Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative, and appoint her counsel as Class Counsel;

B.  Declare that Defendant's Website violates Title III of the ADA, the NYSHRL, the NYCHRL, and the New York Civil Rights Law;

C.  Issue a permanent injunction requiring Defendant to make its Website readily accessible to and usable by blind and visually impaired individuals, including by bringing the Website into compliance with WCAG 2.1 Level AA or such other standard as the Court deems appropriate;

D.  Order Defendant to ensure that all images, buttons, links, headings, forms, labels, selection controls, and other interactive Website components are coded to be accessible to screen-reading software and keyboard navigation, including all product pages, the Homepage, and all checkout and account-related pages;

E.  Order Defendant to implement and maintain policies, practices, procedures, employee training, accessibility testing, consultant oversight, periodic audits, and user feedback mechanisms sufficient to ensure ongoing accessibility of the Website;

F.  Award Plaintiff, the Class, the New York Subclass, and the New York City Subclass all available statutory, compensatory, and/or actual damages to the fullest extent permitted by law;

G.  Award civil penalties where authorized by law;

H.  Award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs; and

I.  Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 20, 2026
New York, New York

**JOSEPH & NORINSBERG, LLP**

*Robert Schonfeld*

Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Telephone No.: (212) 791-5396
rschonfeld@employeejustice.com